# EXHIBIT A

# EXHIBIT A



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

null / ALL
Transmittal Number: 11112172
Date Processed: 04/29/2013

| | |
|---|---|
| Primary Contact: | Patricia Fairfield<br>Apollo Group, Inc.<br>4025 S. Riverpoint Parkway<br>Mail Stop CF-KX01<br>Phoenix, AZ 85040 |
| Entity: | The University Of Phoenix, Inc.<br>Entity ID Number 2740431 |
| Entity Served: | University of Phoenix |
| Title of Action: | Jaime Reborn vs. University of Phoenix |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Clark County District Court, Nevada |
| Case/Reference No: | A-13-680757-C |
| Jurisdiction Served: | Nevada |
| Date Served on CSC: | 04/26/2013 |
| Answer or Appearance Due: | 20 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Jaime Reborn<br>702-773-2642 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

1 | SUMM

DISTRICT COURT

CLARK COUNTY, NEVADA

Jaime Reborn
4759 Arroyo Seco Dr.
Las Vegas, NV 89115
702-773-2642

Plaintiff(s),

CASE NO. A-13-680757-C
DEPT. NO.  XXXI

-vs-

University of Phoenix,
Apollo Group, DOES 1-40

Defendant(s).

**SUMMONS - CIVIL**

NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.

TO THE DEFENDANT(S): A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1. If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:

   (a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

   (b) Serve a copy of your response upon the attorney whose name and address is shown below.

SUMM Civil.doc/4/5/2013

2. Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4. The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Submitted by:

Jame Reborn
Pro Se
4759 Arroyo Seco Dr.
Las Vegas, NV 89115
702-773-2642

STEVEN D. GRIERSON
CLERK OF COURT

APR 2 5 2013

By: Tamara Carvalho
Deputy Clerk            Date
TAMARA CARVALHO
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155

**NOTE:** When service is by publication, add a brief statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).

2

SUMM Civil.doc/4/5/2013

# AFFIDAVIT OF SERVICE

STATE OF _____ )
                   ) ss:
COUNTY OF _____ )

_____, being duly sworn, says: That at all times herein affiant was and is over 18 years of age, not a party to nor interested in the proceeding in which this affidavit is made. That affiant received _____ copy(ies) of the Summons and Complaint, _____ on the _____ day of _____, 20_____ and served the same on the _____ day of _____, 20_____ by:

**(Affiant must complete the appropriate paragraph)**

1. Delivering and leaving a copy with the Defendant _____ at (state address) _____

2. Serving the Defendant _____ by personally delivering and leaving a copy with _____, a person of suitable age and discretion residing at the Defendant's usual place of abode located at (state address) _____

**[Use paragraph 3 for service upon agent, completing (a) or (b)]**

3. Serving the Defendant _____ by personally delivering and leaving a copy at (state address) _____

   (a) With _____ as _____, an agent lawfully designated by statute to accept service of process;

   (b) With _____, pursuant to NRS 14.020 as a person of suitable age and discretion at the above address, which address is the address of the resident agent as shown on the current certificate of designation filed with the Secretary of State.

4. Personally depositing a copy in a mail box of the United States Post Office, enclosed in a sealed envelope, postage prepaid (Check appropriate method):
   ☐ Ordinary mail
   ☐ Certified mail, return receipt requested
   ☐ Registered mail, return receipt requested

addressed to the Defendant _____ at Defendant's last known address which is (state address) _____

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

EXECUTED this _____ day of _____, 20_____.

_____
Signature of person making service

Jaime Reborn
Pro Se
4759 Arroyo Seco Drive
Las Vegas, NV    89119
702-773-2642

FILED
APR 25  2 47 PM '13

CLERK OF THE COURT

## DISTRICT COURT
## CLARK COUNTY, NEVADA

Jaime Reborn

        Petitioner/Plaintiff,

Vs.

University of Phoenix, Apollo Group and Does 1-40

        Respondent/Defendant

NO. A-B-680757-C
XXXI

COMPLAINT AND
DEMAND FOR JURY TRIAL:

1. Breach of Contract
2. Breach of Implied-In-Fact-Contract
3. Breach of Implied Covenant of Good Faith and Fair Dealing
4. Promissory Estoppel
5. Intentional Infliction of Emotional Upset
6. Fraud

## COMPLAINT

Plaintiff Jaime Reborn makes the following Complaint against the Defendants University of Phoenix, Apollo Group and DOES 1-40:

COMPLAINT - 1

Jurisdiction

1.

The Plaintiff, Jaime Reborn, is a resident of Las Vegas in Clark County Nevada. The claims hereinafter stated arose in whole or part in Clark County, Nevada.

2.

The Defendant, University of Phoenix, Inc. and Apollo Group, are corporations doing business in Las Vegas, Nevada and may be served through its Registered Agent, CSC Services of Nevada, Inc., at 2215-B Renaissance Dr., Las Vegas, NV, 89119

Facts

3.

On January 9th, 2007, the Plaintiff began taking online classes at the University of Phoenix, from here on referred to as UOP, in the Doctoral program to receive a Doctoral degree in Management with a specialization in Information Systems Technology from here on referred to in the complaint as DM/IST. The DM/IST program consists of at least 3 years of classes and after those classes are completed a Doctoral Dissertation must also be completed and accepted by UOP for the completion of the degree.

4.

The majority of the classes that the Plaintiff took with UOP were conducted online over the Internet. However, UOP does have a physical campus in Las Vegas, Nevada for conducting business.

6.

On December 2nd, 2008, the Plaintiff began working with Dr. Shannon Hilliker-VanStrander, an instructor at UOP, as his mentor for the purpose of guiding him through the Doctoral Dissertation process. As per UOP, a student must select a mentor to take the DOC/722 Doctoral Seminar II class. With few exceptions, UOP Doctoral students must pick an instructor as mentor or committee member that are employees of UOP.

7.

The DOC/722 Doctoral Seminar II class is a required course for graduation. December 2008 through December 2011, Dr. Shannon Hilliker-VanStrander acted as mentor/committee chair for the Plaintiff until the Plaintiff terminated this mentor/mentee relationship with Dr. Shannon Hilliker-VanStrander.

8.

Unbeknownst to the Plaintiff during much of this time was that Dr. Shannon Hilliker-VanStrander was instructing the Plaintiff to write his Doctoral Dissertation in format that was not approved by UOP. Dr. Shannon Hillker-VanStrander instructed to the Plaintiff to work from a document that was not approved by UOP. This resulted in the Plaintiff having to retake several classes as his Doctoral Dissertation was not deemed ready to submit to UOP for approval.

9.

In October of 2009, the Plaintiff took his second class with Dr. Shannon Hilliker-VanStrander. The course was named DOC/733 Doctoral Dissertation. After the class, Dr. Shannon Hilliker-VanStrander did consider the Plaintiff's Doctoral Dissertation to being ready for the first stage of submission for approval.

10.

In June of 2010, the Plaintiff completed all of his non-Dissertation coursework required by UOP.

11.

In June of 2010, the Plaintiff took his third class with Dr. Shannon Hilliker-VanStrander. The course was named DOC/733A Doctoral Dissertation. After the class, Dr. Shannon Hilliker-VanStrander did consider the Plaintiff's Doctoral Dissertation to being ready for the first stage of submission for approval.

12.

In August of 2010, the Plaintiff took his fourth class with Dr. Shannon Hilliker-VanStrander. The course was named DOC/733B Doctoral Dissertation. After the class, Dr. Shannon Hilliker-VanStrander did consider the Plaintiff's Doctoral Dissertation to being ready for the first stage of submission for approval.

13.

In December of 2010, the Plaintiff took his fourth class with Dr. Shannon Hilliker-VanStrander. This was a retake of the DOC/733B Doctoral Dissertation class. After the class, Dr. Shannon Hilliker-VanStrander did consider the Plaintiff's Doctoral Dissertation to being ready for the first stage of submission for approval.

14.

In April of 2011, the Plaintiff took his fifth class with Dr. Shannon Hilliker-VanStrander. This was a second retake of the DOC/733B Doctoral Dissertation class. After the class, Dr. Shannon Hilliker-VanStrander did consider the Plaintiff's Doctoral Dissertation to being ready for the first stage of submission for approval.

15.

In June of 2011, the Plaintiff took his fifth class with Dr. Shannon Hilliker-VanStrander. This was a third retake of the DOC/733B Doctoral Dissertation class. After the class, Dr. Shannon Hilliker-VanStrander did consider the Plaintiff's Doctoral Dissertation to being ready for the first stage of submission for approval.

16.

In November of 2011, the Plaintiff took a mandatory 4th Year Residency class. This was due to the Plaintiff not making satisfactory progress with his Doctoral Dissertation. This class was named DOC/740R Annual Renewal Residency.

17.

The DOC/740R Annual Renewal Residency would not have been necessary with if the Plaintiff had been proper guidelines for the Doctoral Dissertation

18.

The Defendants has already admitted that the document that Dr. Shannon Hilliker-VanStrander instructed the plaintiff with was not approved by UOP and that it was a direct result of the Plaintiff's Doctoral Dissertation not being approved at the first stage of submission. In January of 2013, after months of complaints and inquiries by the Plaintiff about the process, the Defendants offered the Plaintiff a settlement of over $17,000.00.

19.

In March of 2013, the Defendant, UOP rescinded the settlement offer after the Plaintiff asked the Defendants to allow him to work with someone from UOP who actually knew the correct format for how the Doctoral Dissertation was supposed to be formatted.

20.

The Plaintiff stated to the Defendants his concern that the Defendants could perpetually keep the Plaintiff taking numerous repeats of classes and Doctoral Dissertation submissions just to recoup their settlement amount if he is forced to work with someone who is not familiar the UOP Doctoral Dissertation process.

21.

In December of 2011, the Plaintiff began working with a different mentor, Dr. Matthew D. Gonzalez.

22.

In April of 2012, the Plaintiff submitted his Doctoral Dissertation for the first time, under his new mentor, Dr. Matthew D. Gonzalez. The Doctoral Dissertation was rejected. The Plaintiff inquired about why the Doctoral Dissertation was rejected as the plaintiff felt that he had followed the guidelines in document given to him by former mentor Dr. Shannon Hilliker-VanStrander. Dr. Diane Gavin, a UOP representative, responded to the Plaintiff informing him that the document given to him by Dr. Shannon Hillker-VanStrander.

It was in April of 2012 when the Plaintiff had proof that he had been improperly instructed by Dr. Shannon Hilliker-VanStrander.

COMPLAINT - 4

23.

During the Plaintiff's correspondence with Dr. Diane Gavin in April of 2012, the Plaintiff asked for a refund of his classes taken with Dr. Shannon Hilliker-VanStrander. This request was denied by the Defendant, UOP.

24.

In June of 2012, the Plaintiff's Dissertation Proposal was accepted for the first stage of the Doctoral Dissertation process after several edits to correct it from format and guidelines that he had been instructed write his Doctoral dissertation in by Dr. Shannon Hilliker-VanStrander.

25.

In October of 2012, the Plaintiff's Dissertation Proposal was accepted for the second stage of the Doctoral Dissertation process after numerous submissions.

26.

In October of 2012, the Plaintiff received a formal letter from the Defendants stating that that he would not reimbursed for the erroneous instruction that he received from Dr. Shannon Hilliker-VanStrander which resulted in him having to take several unnecessary classes.

27.

In November of 2012, the Plaintiff enrolled into DOC/734 Doctoral Project IV with Dr. Matthew D. Gonzalez as his instructor.

28.

In November of 2012, the Plaintiff contacted the Defendants by phone and spoke with Stephanie Neuhring from UOP's Office of Dispute Management. I reiterated to her that I felt that I should be reimbursed for the erroneous instruction that I received from UOP at under the instruction of Dr. Shannon Hilliker-VanStrander. I was told by Ms. Neuhring to submit my information in writing and that UOP would review the matter further.

29.

The Plaintiff had asked Dr. Gavin about the guidelines for completing the last two chapters necessary for the Doctoral Dissertation. Dr. Gavin stated that UOP had no guidelines for completing the final two chapters necessary for the Doctoral Dissertation. On November 29th, 2012, the Plaintiff submitted his Doctoral Dissertation for third and de facto final part of the Doctoral Dissertation approval process.

30.

On December 11th, 2012, the Plaintiff corresponded via E-mail with Dr. Jeremy Moreland, the Executive Dean of UOP and expressed his concerns that UOP did not have any guidelines for chapters 4 and 5, the final two chapters to complete the Doctoral Dissertation. Dr. Moreland stated to the Plaintiff that UOP had "committed individuals converged to support" me in the matter. However, he did not explain why my several requests to meet in person with a live human representative of UOP had not been granted.

31.

The Plaintiff stated to Dr. Moreland in the December 11th, 2012 correspondence that not having guidelines for the final two chapters of the of the Doctoral Dissertation seem to be a system designed for UOP to all but guarantee the resubmissions of the Doctoral Dissertations.

32.

In January of 2013, the Defendants offered the Plaintiff a settlement in the amount of $17,570.00. The settlement agreement was E-mailed to be by Ms. Neuhring with the name of Dr. William Pepicello, President of UOP in the signature block for the school.

33.

The Plaintiff informed Ms. Neuhring, during this correspondence in January, that his Doctoral Dissertation had not been yet accepted and that he was concerned that UOP was attempting to negotiate in bad faith by refusing to approve his Doctoral Dissertation and that he would like his Doctoral Dissertation accepted prior to making a decision on a settlement for damages because he was concerned that UOP would purposely not approve his Doctoral Dissertation in order to recoup their the settlement offer by forcing him to have to retake classes in order for him to resubmit his Doctoral Dissertation, thus resulting in further damages.

34.

On January 19th, 2013, the Plaintiff's Doctoral Dissertation was denied by UOP officials confirming the suspicion of the Plaintiff that his Doctoral Dissertation would be unfairly denied in order to continue financially exploiting the Plaintiff by unfairly forcing the Plaintiff to continue to retake unnecessary classes. Many of the guidelines that the Defendants used to reject the Plaintiff's Doctoral Dissertation were guidelines that had not been disclose by UOP to the Plaintiff.

35.

At no point during the time that Plaintiff was taking and retaking several classes with Dr. Shannon Hilliker-VanStrander did the Defendent, UOP, ever question the Plaintiff's lack of Progress taking place in completing his Doctoral Dissertation.

36.

Dr. Shannon Hilliker-VanStrander had a financial incentive to keep the Plaintiff taking and retaking as many classes with under her as possible. The longer the plaintiff was taking and re-taking preparatory Doctoral Dissertation classes, the more money she would receive.

37.

The Defendants had a financial incentive to keep the Plaintiff taking and retaking as many courses as possible. The longer the Plaintiff was taking and retaking preparatory Doctoral Dissertation Course, the more money UOP would receive.

38.

The Defendants had a policy by which students had to submit their Doctoral Dissertation either while in class or up to 28 days after a class had ended. The reviews of the Doctoral Dissertations can take well over 30 days. Such a policy, essentially, ensured that students would have to retake a class for every submission as the school.

39.

The breach of this contract by the Defendants was without an arguable basis and was accompanied by conduct so willful and so grossly negligent as to constitute an independent tort.

40.

As a direct and proximate result of the Defendants' wrongful conduct as described in this Complaint, the Plaintiff has suffered, and continues to suffer, damages. The exact amount of these damages are unknown but are reasonably believed to exceed $150,000.00 which is approximately the cost of the courses the Plaintiff has taken in the DM/IST program at UOP. The information necessary to calculate these damages has been withheld from the Plaintiff by the Defendants. Moreover, the Defendants' wrongful conduct constitutes bad faith and involves such willfulness and maliciousness that it rises to the level of an independent tort or torts, thus entitling the Plaintiff to recover punitive damages from the Defendants.

41.

As a result of the Plaintiff not having his DM/IST he has lost several employment opportunities in his field. This is particularly true in regarding the Plaintiff being able to teach at the university level which for the most part requires a Doctoral level degree.

42.

Given the conduct of the Defendants, the pecuniary ability or financial worth of the Defendants, then $500,000.00 per Defendant is well within the amount reasonably necessary for punishment of the wrongdoing, deterring the Defendants from similar conduct and to make an example of the Defendants so others may be deterred.

43.

During October of 2012, Dr. Andrew White, one of the Plaintiff's committee members and an employee of the University of Phoenix, became unresponsive to E-mails, phone calls and text messages sent to him by the Plaintiff for requests to assist with the Plaintiff's Doctoral Dissertation.

44.

The Plaintiff contacted Dr. Gavin through several E-mails and Dr. White could not be located and the Plaintiff never received any communication from Dr. White.

45.

Dr. White informed UOP officials that he had contacted the Plaintiff when, in fact, Dr. White had not contacted the Plaintiff.
COMPLAINT - 7

38.

The Defendants had a policy by which students had to submit their Doctoral Dissertation either while in class or up to 28 days after a class had ended. The reviews of the Doctoral Dissertations can take well over 30 days. Such a policy, essentially, ensured that students would have to retake a class for every submission as the school.

39.

The breach of this contract by the Defendants was without an arguable basis and was accompanied by conduct so willful and so grossly negligent as to constitute an independent tort.

40.

As a direct and proximate result of the Defendants' wrongful conduct as described in this Complaint, the Plaintiff has suffered, and continues to suffer, damages. The exact amount of these damages are unknown but are reasonably believed to exceed $150,000.00 which is approximately the cost of the courses the Plaintiff has taken in the DM/IST program at UOP. The information necessary to calculate these damages has been withheld from the Plaintiff by the Defendants. Moreover, the Defendants' wrongful conduct constitutes bad faith and involves such willfulness and maliciousness that it rises to the level of an independent tort or torts, thus entitling the Plaintiff to recover punitive damages from the Defendants.

41.

As a result of the Plaintiff not having his DM/IST he has lost several employment opportunities in his field. This is particularly true in regarding the Plaintiff being able to teach at the university level which for the most part requires a Doctoral level degree.

42.

Given the conduct of the Defendants, the pecuniary ability or financial worth of the Defendants, then $500,000.00 per Defendant is well within the amount reasonably necessary for punishment of the wrongdoing, deterring the Defendants from similar conduct and to make an example of the Defendants so others may be deterred.

43.

During October of 2012, Dr. Andrew White, one of the Plaintiff's committee members and an employee of the University of Phoenix, became unresponsive to E-mails, phone calls and text messages sent to him by the Plaintiff for requests to assist with the Plaintiff's Doctoral Dissertation.

44.

The Plaintiff contacted Dr. Gavin through several E-mails and Dr. White could not be located and the Plaintiff never received any communication from Dr. White.

45.

Dr. White informed UOP officials that he had contacted the Plaintiff when, in fact, Dr. White had not contacted the Plaintiff.

46.

Due to Dr. White's conduct, the Plaintiff had to find a new committee member in order to re-submit his Doctoral. This new committee member had no familiarization with the Plaintiff's Doctoral Dissertation and thus the re-submission of the Plaintiff's Doctoral Dissertation took longer several weeks longer than it should have.

47.

The Plaintiff had to choose instructors that were supposedly approved by UOP and available to assist students but many instructors stated that they were unavailable to assist the Plaintiff with his Doctoral Dissertation and thus should not have been on the approved/available list.

48.

By forcing the Plaintiff to search for mentors and committee members through a list of instructors that are not available and otherwise unqualified to be mentors or committee members the Defendants financially exploited the Plaintiff by keeping the Plaintiff in the course longer than necessary.

49.

On or about March, 2012, Dr. James Francisco, one of the Plaintiff's committee members and an employee of the University of Phoenix, became unresponsive to E-mails, phone calls and text messages sent to him by the Plaintiff for requests to assist with the Plaintiff's Doctoral Dissertation.

50.

Due to Dr. Francisco's conduct, the Plaintiff had to find a new committee member in order to submit his Doctoral. This new committee member had no familiarization with the Plaintiff's Doctoral Dissertation and thus the submission of the Plaintiff's Doctoral Dissertation took longer several weeks longer than it should have.

## CLAIMS FOR RELIEF

51.

### A. BREACH OF CONTRACT

The Defendants failure to provide the Plaintiff with proper preparation for the completion of his Doctoral Dissertation constitutes a willful breach of contract by the Defendants was attended with malice, insult and abuse that it constitutes an independent tort, thus entitling the Plaintiff to recover punitive damages as well as actual damages, which were proximately and foreseeable caused by the Defendants' breach.

52.

## B. BREACH OF IMPLIED-IN-FACT CONTRACT

The Defendants' words to and conduct toward the Plaintiff constituted an implied promise to provide the Plaintiff an education based upon academic merit and not financial exploitation. The Defendants breached that promise without good cause and in bad faith. The Defendants' promise in this respect was supported by adequate consideration, including but not limited to continued substantial detrimental reliance, and as a direct and proximate result of the Defendants' breach, the Plaintiff suffered general damages. The breach by the Defendants of their promise, which was willful or grossly negligent, was attended by such malice, insult, and abuse that it constituted an independent tort, thus entitling the Plaintiff to recover punitive damages as well as actual damages.

53.

## C. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The Defendants breached the above described contract for reasons incompatible with good faith and fair dealing, as a proximate and foreseeable result of which the Plaintiff suffered damages. The breach of contract was wholly unsupported by any arguable reasons, was willful, malicious, and in bad faith.

54.

## D. PROMISSORY ESTOPPEL

The Defendant deliberately made promises to the Plaintiff when they expected that the Plaintiff would rely on those promises. Those promises were known by the Defendants to have created a reasonable expectation in the Plaintiff that the Plaintiff would receive his DM/IST degree. The degree continues to be denied based upon the Defendants' financial exploitation of the student and not any type of academic merit. The Plaintiff relied to his substantial detriment upon those promises. Injustice can only be prevented by enforcing the Defendants' promises. The Defendants' breach of their promises and assurances proximately caused the damages previously described in the Complaint, said damages were foreseeable and the Defendants' conduct causing these damages was attended by malice, willfulness, insult, and abuse, thus entitling the Plaintiff to recover punitive as well as actual damages.

55.

### E. INTENTIONAL INFLICTION OF EMOTIONAL UPSET

The Defendants' unlawful conduct as previously described in this Complaint, was known to the Defendants to be likely to produce emotional distress in the Plaintiff, and it did in fact produce emotional distress in the Plaintiff. As a direct and proximate result of the Defendants' unlawful conduct the Plaintiff has suffered emotional distress and emotional damage of at least $300,000.00. The Defendants' conduct as previously described was outrageous, wholly without legal or factual justification, was malicious and wanton, and thus entitles the Plaintiff to recover actual and punitive damages as previously described.

56.

### F. FRAUD

The Defendant's unlawful conduct was specifically designed to defraud the Plaintiff monetarily and Doctoral level education. The Defendants did not have a primary intent of providing the Plaintiff with an education but rather to use the ruse of an educational process to defraud the Plaintiff monetarily by keeping the Plaintiff in tethered to the program as long as possible.

### REQUEST FOR JURY TRIAL

The Plaintiff hereby requests that a trial for the above entitled-action be heard before a jury.

### RELIEF

Plaintiff prays for a judgment providing the following relief:

1. For breach of contract, breach of implied-in-fact-contract, breach of the implied covenant of good faith and fair dealing: a judgment of this Court against the Defendants, awarding the Plaintiff $75,000.00 and further awarding Plaintiff $250,000.00 in punitive damages from each defendant. The Plaintiff further prays that the Defendant be required to pay the costs of this action and reasonable attorneys' fees in the amount of $1,000.00.

2. For the remaining claims of promissory estoppel, intentional infliction of emotional distress and fraud: a judgment of this Court awarding to the Plaintiff actual damages sustained as a result of the wrongful conduct of the Defendant in the amount of at least $75,000.00 actual damages and further awarding Plaintiff $250,000.00 punitive damages from each defendant, together with reasonable attorneys' fees and costs.

3. Such other and further relief to which the Plaintiff may be justly entitled.

Respectfully submitted,                    Date: 04/25/2013

*Jaime R*
Jaime Reborn
Pro Se

4759 Arroyo Seco Drive
Las Vegas, NV        89119
702-773-2642

COMPLAINT - 11