UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Jaime Reborn, | Case No. 2:13-cv-00864-RFB-VCF |
| Plaintiff, | **ORDER** |
| v. | |
| University of Phoenix and Apollo Group, Inc., | |
| Defendants. | |

Before the Court is Defendants University of Phoenix and Apollo Group, Inc.'s Motion for Summary Judgment, ECF No. 22. For the reasons discussed below, the Court grants the motion with regard to Plaintiff Jamie Reborn's second, fifth, and sixth claims, denies the motion as to first and fourth claims, and denies the motion as moot as to the third claim.

**I.     Background**

After completing his master's degree from the University of Phoenix, Jaime Reborn enrolled in the Doctor of Management in Information Systems and Technology ("DM/IST") program at the University of Phoenix (the "University") on October 26, 2006. In June 2013, Reborn graduated with his DM/IST degree.

Reborn alleges the University intentionally delayed his progress toward the completion of his DM/IST degree for the purposes of getting more tuition money from him. In part, Reborn alleges that one of his professors, Dr. Shannon Hiliker-VanStrander, provided guidance to him that affirmatively delayed the approval of his dissertation.

On April 25, 2013, Reborn filed a complaint and demand for jury trial against the University of Phoenix, Apollo Group, and Does 1–40 in the state district court in Clark County,

1  Nevada. ECF No. 1-1. The complaint alleged six causes of action: breach of contract, breach of implied-in-fact contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, intentional infliction of emotional distress, and fraud. Id. at ¶¶ 51–56.

On May 16, 2013, the University of Phoenix, Inc. and Apollo Group, Inc. ("Defendants") petitioned for removal from state court to this Court on the basis of diversity jurisdiction. ECF No. 1. On May 16, Defendants also filed an answer. ECF No. 2.

On August 26, 2013, Magistrate Judge Ferenbach issued a discovery scheduling order. ECF No. 11. On October 29, at the parties' request, Magistrate Judge Ferenbach extended the discovery deadlines. ECF No. 19. Discovery closed on January 13, 2014. Id.

Defendants filed the instant motion for summary judgment on February 22, 2014. ECF No. 22.

On April 29, 2014, Plaintiff moved to transfer the case to Texas. ECF No. 28. This motion was denied on June 16. ECF No. 30.

On April 21, 2015, the Court ordered the parties to file properly supported evidence related to the instant motion for summary judgment. ECF No. 40. Defendants filed three supplements to the evidence attached to their motion for summary judgment; Plaintiff filed none. At a hearing on April 24, the Court gave Reborn until May 4 to file properly supported evidence. On May 4, Reborn filed an affidavit with evidence. ECF No 46.

On May 13, 2015, the Court heard argument regarding the Motion (the "Hearing"). ECF No. 48. This order follows.

## II.  Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). At summary judgment, "a nonmoving party plaintiff has no obligation to produce anything until the moving party defendant has carried its initial burden of production." Nissan Fire & Marine Ins. Co., Ltd.

v. Fritz Companies, Inc., 210 F.3d 1099, 1107 (9th Cir. 2000). The moving party defendant carries its initial burden of production by (1) producing evidence negating an essential element of the nonmoving party's claim, or (2) after discovery, showing "that the nonmoving party [plaintiff] does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Id. at 1106.

To carry the burden of production under either method, the moving party must identify particular portions of the pleadings or evidence on file that it "believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "The [Supreme] Court held that defendant Celotex could meet its initial burden of production by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Nissan Fire & Marine, 210 F.3d at 1105.

If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). "In considering a motion for summary judgment, of course, the court decides a pure question of law and is not permitted to weigh the evidence or to judge the credibility of witnesses." Neely v. St. Paul Fire & Marine Ins. Co., 584 F.2d 341, 344 (9th Cir. 1978).

The party seeking the admission of documents on motion for summary judgment bears the burden of proof to show their admissibility. Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1051 (9th Cir. 2012). "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

//
//
//
//

III.   **Factual Findings**

A. **Requests for Admissions**

Defendants ask the Court to find that Reborn's failure to respond to Defendant's First Set of Requests for Admission constitute deemed admission of the requests and that they now be "conclusively established." Mot. for Summ. J. 11–12, ECF No. 22; see Defs'. First Set of Reqs. for Admis., Def. Ex. 28, ECF No. 22-28. This the Court will not do.

The request itself includes a certification that it was sent by email and US mail. First Set of Reqs. for Admis., Def. Ex. 28 at 7, ECF No. 22-28.   While this establishes, presumptively, that the Request was sent, it does not establish that the Request was received, and no additional evidence—such as a postal or email record demonstrating receipt—is provided. Reborn states in his response, that "The Plaintiff, Jaime Reborn, does not recall receiving such documents." Resp. 4:22, ECF No. 24.

More telling, however, the Court notes the Defendants filed no motion to compel discovery. Furthermore, Defendants have attached no evidence that they sought to meet and confer as required for the filing of such a motion to compel, pursuant to FRCP 37(a)(1). These facts are consistent with Reborn's statement in his Response that "At the deposition, counsel for the Defendants' made no mention of any additional outstanding documents." Resp. 4:25–28, ECF No. 24.

Accordingly, the Court finds that Defendants have not established that Reborn received the specified Requests for Admissions, ECF No. 22-28, and the Court therefore does not find that the matters therein have been conclusively established.

B. **Undisputed Facts**

Based upon its review of the record and the proceedings in this case, the Court finds the following facts to be undisputed. Reborn enrolled in the DM/IST program at the University of Phoenix on October 26, 2006. Enrollment Agreement, Def. Ex. 7, ECF No. 22-7. The Enrollment Agreement specifically incorporates the University of Phoenix catalog. Id.; The University of

Phoenix 2006 Online Catalog, Def. Ex. 6, ECF No. 22-6. The Catalog sets forth requirements for the DM/IST program.

Reborn began taking courses towards his doctoral degree on or about January 9, 2007. Compl. ¶ 3, ECF No. 1-1. He began taking coursework specific to his doctoral dissertation in October 2008. Id. at ¶¶ 7. He completed his non-dissertation coursework in June 2010. Id. at ¶ 10. Reborn struggled with parts of the doctoral program. E.g., VanStrander Aff. ¶¶ 6–10, ECF 22-10; Response 4:8–10, ECF No. 24. Reborn repeated certain classes. Id. at ¶¶ 17–31; Compl. ¶¶ 8, 12–15, ECF No. 1-1.

Beginning in 2008, Dr. VanStrander was Reborn's mentor and chairperson of his dissertation committee. Compl. ¶ 7, ECF No. 1-1; Answer ¶ 7, ECF No. 2. Dr. VanStrander provided Reborn with documents and a template providing guidance regarding how to prepare a dissertation. Pl. Ex. 2 at 26, ECF No. 46; VanStrander Aff. ¶ 11, ECF No. 22-10. This template provided by Dr. VanStrander was not an approved model and included incorrect information about final steps for completing the dissertation and hence the degree. Pl. Ex. 1 at 1–4, ECF No. 46.

On December 2, 2011, Reborn ended the mentor/mentee relationship with Dr. VanStrander. VanStrander Aff. ¶ 34, ECF No. 22-10; Compl. ¶ 7, ECF No. 1-1. Reborn's new mentor, beginning December 2011, was Dr. Gonzalez. Compl. ¶ 21, ECF No. 1-1. On April 20, 2012, Reborn emailed the template he had received from Dr. VanStrander to Dr. Gonzalez with instructions to forward it to Dr. Gavin, as Reborn had been instructed not to contact Dr. Gavin directly. Pl. Ex. 1 at 13 ("Dr. Gonzalez, please express to Diane Gavin my disappointment with this process. I am being told that I am not supposed to contact her directly . . . ."); Pl. Ex. 1 at 3–5, ECF No. 46 ("I found the document that I was given from my previous mentor, Dr. Shannon Vanstrander, which contravenes the rubric that Dr. Gavin suggested that I follow. I have attached it with this correspondence."). Dr. Gavin is the Doctoral Campus Chair for Research with the University. Gavin Aff. ¶ 1, ECF No. 22-8. On April 26, 2012, Dr. Gavin emailed Reborn that Dr. VanStrander's template was not an approved model and that many of Reborn's issues arose from the template. Pl. Ex. 1 at 1, ECF No. 46 ("I looked at the template that your former Chair, Dr VanStrander, provided you, and that is not an approved model. I do not know where Dr

VanStrander received that template, but many of the issues arise from the template you received.")

Reborn received a DM/IST from the University in June of 2013. Reborn Dep. 135:7–10, ECF No. 41-1.

**IV. Discussion**

      **A. Promissory Estoppel (fourth claim)**

In his opposition to Defendants' Motion for Summary Judgment, Reborn stated, "[a]s the Plaintiff, Jaime Reborn, has graduated, drops the case of Promissory Estoppel although such legal grounds were in effect when the Plaintiff was being denied his degree." Response 6:10–12, ECF No. 24. At the Hearing, the Court asked Reborn to confirm that he was formally withdrawing his promissory estoppel claim. Reborn affirmed this intention.

Accordingly, the Court holds that Reborn has withdrawn his third cause of action for promissory estoppel. Consequently, the Court does not address summary judgment on this claim, as it is moot.

      **B. Breach of Contract (first claim) and Breach of Implied Covenant of Good Faith and Fair Dealing (third claim)**

Because there is at least a dispute of material fact regarding an element of breach of contract and the breach of the implied covenant of good faith and fair dealing, these two claims survive summary judgment.

         **1. Breach of Contract**

Breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (1987). A breach of contract claim under Nevada law requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. Richardson v. Jones, 1 Nev. 405, 409 (1865); Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Richardson).

Here, it is undisputed that Reborn and the University entered into a valid contract: specifically, the student enrollment agreement and associated University of Phoenix documents (the "Contract"). Defendants attach to their Motion for Summary Judgment the Enrollment Agreement, Def. Ex. 7, ECF No. 22-7, which sets forth broadly the terms of the agreement between the University and Reborn. In part, the Enrollment Agreement states that "A total of 62 doctoral credits is required to complete the University of Phoenix Doctor of Management in Information Systems and Technology Degree." Id. The Enrollment Agreement further states that "I understand this information to represent the requirements for my degree completion . . . . I also acknowledge having received a University of Phoenix catalog . . . describing my chosen degree program admission and degree completion requirements . . . ." Id. The Enrollment Agreement is electronically signed by the plaintiff (then named Jim Taylor).

The University of Phoenix 2006 Online Catalog, Def. Ex. 6, ECF No. 22-6, elaborates somewhat on the DM/IST degree requirements. In part, it states

> Satisfactory complete of the 62 credit required course of study. . . .
> Satisfactory completion of all residencies.
> Satisfactory oral defense and written completion of the dissertation.
> . . .
> Completion of all degree requirements within five years of the first residency (The academic program Dean may grant a 1-year extension once for extenuating circumstances).

Id. at 131. However, while the Catalog includes more program detail than the Enrollment Agreement, even taken together these documents clearly do not include all necessary terms of the Contract between the University and Reborn. Consequently, the Court finds that the Contract between Reborn and the University necessarily included the understanding that the University would provide further information and instruction regarding what Reborn would need to do to complete the Contract, especially as it related to his "residences" and "dissertation." Both parties clearly contemplated and understood that the University would need to further clarify how Reborn would satisfy the requirements for the degree, including the type of courses that would need to be taken and the form and substance of the residences and dissertation. That is, the University would provide the appropriate terms for Reborn to receive his degree and Reborn would then perform

them. The Court further finds that Dr. VanStrander's representations, instructions, and direction regarding how to, and what is required to, complete the dissertation were and are a part of the performance under the Contract of the Defendants' obligations to elaborate and explain the detailed requirements for the completion of the degree.

Reborn alleges he performed his part of the Contract, and the University breached and/or performed in a manner unfaithful to the purpose of the Contract. The University alleges Reborn did not perform his part of the Contract adequately and that Reborn's academic deficiencies caused the delays in his graduation. Reborn supports his position with an email from Dr. Gavin, which reads in part, "I looked at the template that your former Chair, Dr Vanstrander, provided you, and that is not an approved model. I do not know where Dr Vanstrander received that template, but many of the issues [in your dissertation proposal] arise from the template you received." Pl. Ex. 1 at 4–5, ECF No. 46. The University supports its position with various evidence of Reborn's academic issues—some of which are noted by Dr. Gavin in the same email referenced above. E.g., VanStrander Aff. ¶¶ 6–10, ECF 22-10. Specifically, the University asserts that many of the issues or problems impeding Reborn's academic progression did not arise from the errant advice he may have received from Dr. VanStrander. E.g., VanStrander Aff. ¶¶ 7–8, 10, 16, 22, 25–26, 30–33, ECF 22-10; Gavin Aff. ¶¶ 20–28.

The Court finds that Reborn has raised a genuine issue of fact as to whether the University adequately performed under the Contract. Under the Contract, the University had an obligation, as noted above, to clearly outline the manner by which Reborn would have to satisfy his degree requirements. The record indicates that Reborn has raised a plausible argument that the University did not adequately perform this obligation in that it misled Reborn about the actual requirements necessary to complete his degree. Thus, a genuine issue of disputed fact exists as to whether the University properly performed its obligations under the Contract.

Defendants further aver that the Court should give great deference to an educational institution's academic decisions. See Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment."). The Court, of course agrees

that such deference is required, however, here, the Court is not being asked to review the substance of a genuinely academic decision.  Neither the Court nor the finder of fact need decide whether the University was or is correct in its evaluation of Reborn's academic performance or the implications of any academic deficiencies.  In fact, the issue before the Court is not *how* the University applied academic judgment, but *whether* an academic judgment or decision was the basis for Reborn's alleged delay in receiving his degree.  There is a genuine issue of disputed fact as to whether it was truly an academic decision based on Reborn's own poor or inadequate academic performance that led to this alleged delay or whether it was misrepresentations by University faculty that led to this delay.  The resolution of this dispute necessarily requires a weighing of the facts surrounding Reborn's academic tenure and is thus a question for a jury or factfinder.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

The Court also finds that the misstatements of University officials, specifically Dr. VanStrander, create a genuine issue of disputed fact as to whether the University performed in a manner consistent with the justified expectations of Reborn.  Under Nevada law, an implied covenant of good faith and fair dealing exists in every contract.  Pemberton v. Farmers Ins. Exch., 858 P.2d 380, 382 (1993).  "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith."  Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 923 (1991).  Even in the absence of a breach of contract, a plaintiff may still recover damages for breach of the implied covenant of good faith and fair dealing.  Id. at 922.

The Court finds that Reborn has raised a plausible argument the implied covenant of good faith and fair dealing was breached by the University.  First, the record in this case demonstrates that incorrect information about degree requirements was communicated to Reborn by a University official who was ostensibly charged with providing him accurate information.  Reborn had a justified expectation that the University would not provide him with such misinformation.

1    Second, Reborn Moreover, he has raised a plausible argument that the misinformation or
2    inaccurate degree schedule was at a minimum provided through the University's own reckless
3    supervision of its dissertation mentoring process.  That is, the University, and specifically the
4    department in which he was seeking a degree, was reckless in the manner in which it oversaw this
5    process and Dr. VanStrander was reckless in her provision of the documents to Reborn.  Dr.
6    VanStrander, for example, does acknowledge the lack of clarity of the requirements she forwarded
7    when she noted that they were a work-in-progress.   Pl. Ex. 2 at 26, ECF. 46.  She further admits
8    that "this is new to me too so you will essentially be a guinea pig for me and your committee." Id.
9    It is also undisputed that Reborn repeated the DOC 733B class with Dr. VanStrander four times
10   and that his dissertation was reviewed by faculty on his Dissertation Committee prior to
11   submission of the dissertation to the Quality Review Board. Pl. Ex. 1 at 7–9, ECF. 46; VanStrander
12   Aff. ¶¶ 29, ECF 22-10; Gavin Aff. ¶¶ 17–18.  However, it was not until after review by the Quality
13   Review Board that Reborn was informed he had been working with what Dr. Gavin described as
14   an "incorrect" and "not approved" model. Pl. Ex. 1 at 1–4, ECF. 46   Reborn had a justified
15   expectation that the University would not be so reckless in the administration of its degree
16   programs that dissertation mentors would be providing substantively inaccurate information to
17   graduate students.  Such conduct by the University is not and would not be faithful to the purpose
18   of the contract—which is to allow Reborn to complete the requirements as clearly set forth by the
19   University for attainment of his degree.
20   For the reasons noted above, Reborn had raised a genuine issue of disputed fact as to his
21   claim for breach of the implied covenant of good faith and fair dealing.
22
23                **C. Breach of Implied-in-Fact Contract (second claim)**
24   Reborn alleges the existence a second, implied-in-fact contract, in addition to the physical,
25   signed student agreement between Reborn and the University discussed above.
26   "Basic contract principles require, for an enforceable contract, an offer and acceptance,
27   meeting of the minds, and consideration." May v. Anderson, 119 P.3d 1254, 1257 (2005).  "A
28   contract implied-in-fact must be manifested by conduct; it is a true contract that arises from the

tacit agreement of the parties. To find a contract implied-in-fact, the fact-finder must conclude that the parties intended to contract and promises were exchanged, the general obligations for which must be sufficiently clear. It is at that point that a party may invoke quantum meruit as a gap-filler to supply the absent term." Certified Fire Prot. Inc. v. Precision Constr., 283 P.3d 250, 256 (2012). Such a claim is not available when there is an express, written contract, because no agreement can be implied when there is express agreement. Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975, 942 P.2d 182, 187 (1997).

Reborn has not presented sufficient facts for this claim to proceed. This is in part because he has not adequately outlined his argument to a degree that the Court can understand the nature of his claim. More specifically, it is not clear with whom Reborn is alleging that he had an implied-in-fact contract. It would appear that, taken in the Complaint's best light, Reborn is alleging that this implied contract arose from an agreement between Reborn and Dr. Shannon VanStrander wherein she gave to him a document purported to outline how to formulate a dissertation for the purpose of dissertation approval. Compl. ¶¶ 8, 18, 22. Insofar as Reborn may be claiming that the instructions given by Dr. VanStrander created a separate contract (by which his following of the guidelines would result in an approved dissertation), Reborn must provide evidence of offer, acceptance, and consideration. However, there is no evidence on the record of any consideration given for any new contract between Dr. VanStrander and Reborn, and thus there can be no implied-in-fact contract.

The Court also rejects the existence of such a contract between Reborn and Dr. VanStrander because the Court has already found that her guidance was a part of the contract between Reborn and the University. There can be no implied contract where the alleged agreement is already part of an existing express written contract. Robert L. Brooks Trust Dated Nov. 12, 1975, 942 P.2d at 187.

Alternatively, Reborn may be alleging that an implied-in-contract exists to establish the student-school relationship of money-for-education. Compl. ¶ 52. That relationship, however, is also controlled by the express, written Contract and therefore cannot be the subject of an implied-in-fact contract.

Under either interpretation of the Complaint, this claim fails. Therefore, summary judgment as to breach of implied contract is granted.

### D. Intentional Infliction of Emotional Distress (fifth claim)

There is an absence of evidence to support Reborn's claim for intentional infliction of emotional distress.

In order to prevail on such a claim, a plaintiff must show (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation. Posadas v. City of Reno, 851 P.2d 438, 444 (1993). "Extreme and outrageous conduct," as an element of intentional infliction of emotional distress, is that conduct "which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community. . . . [P]ersons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind." Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (1998) (internal quotation marks omitted). "In the context of intentional infliction of emotional distress, . . . [t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress." Chowdhry v. NLVH, Inc., 851 P.2d 459, 462 (1993).

The record does not provide adequate evidence of outrageous behavior or significant injury to support a claim for intentional infliction of emotional distress. Indeed, it must first be noted that the Complaint includes no allegations of extreme and outrageous behavior. The Complaint alleges delays in education, non-response to emails, and bad-faith negotiations, See Compl. ¶¶ 8, 22, 23, 43, 44, 49, 50, but alleges no outrageous behavior and no claims of extreme emotional distress. This position appears to be reflected in Reborn's response, where he suggests "The Defendants' . . . inflicted intentional emotional distress as they were aware of the issues and did not attempt to resolve the Plaintiff's concerns until the Plaintiff repeatedly brought the matter to their attention." At his deposition, in describing the damages he feels he is due, Reborn reiterated the bad-customer-service rationale: "Because of the poor service that I have received and being exploited by the university, I feel that all of my tuition and expenses should be reimbursed."

1   Reborn Dep. 145:17–19, ECF No. 41-1.  Poor customer service, a common occurrence in modern

2   society, is simply not a matter "outside all possible bounds of decency . . . regarded as utterly

3   intolerable in a civilized community." See Maduike, 953 P.2d at 26.

4        Secondly, a review of the Complaint reveals no allegations of emotional harm resulting

5   from the University's alleged conduct.  That is to say that there is scant evidence on the record of

6   any emotional distress and any resulting ill effects Reborn may have suffered.  The only evidence

7   apparently on-point comes from Reborn's deposition, in which he briefly discusses harm:

> Q. Do you have any medical issues?
> A. Not that I'm aware of.
> Q. Have you been to visit the doctor in the last five years?
> A. I'm sure I have.
> Q. Any injuries? What did you visit the doctor for, I guess, is probably the question?
> A. Regular illnesses. You know, get sick, go -- get cold, go see the doctor.
> Q. Okay. You were not injured by any way because of University of Phoenix, physically injured?
> A. Physically injured, not that I'm aware of at this point. Lots of stress though.

15  Reborn Dep. 139:21–140:8, ECF No. 41-1.  General physical or emotional discomfort is

16  insufficient to demonstrate severe emotional distress.  See Chowdhry, 851 P.2d at 462. For

17  example, in Chowdhry, the court found testimony that plaintiff "was very upset and could not

18  sleep" was insufficient.  851 P.2d at 462.  There are simply no facts on record supporting emotional

19  symptoms suffered, treatments sought, or anything else that might establish severe or extreme

20  emotional distress, particularly in the context of the University's behavior.  See Chowdhry, 851

21  P.2d at 483.

22       As Reborn has failed to provide evidence demonstrating either the necessary conduct or

23  harm, a discussion of causation is moot.  For the reasons noted, summary judgment is granted as

24  to the claim for intentional infliction of emotional distress.

**E.  Fraud (sixth claim)**

The evidence before the court does not support a claim of fraud.

Under Nevada Law, to establish a claim for fraud, a plaintiff must prove "1. A false

1  representation made by the defendant; 2. Defendant's knowledge or belief that the representation
2  is false (or insufficient basis for making the representation); 3. Defendant's intention to induce the
3  plaintiff to act or to refrain from acting in reliance upon the misrepresentation; 4. Plaintiff's
4  justifiable reliance upon the misrepresentation; and 5. Damage to the plaintiff resulting from such
5  reliance." Bulbman, Inc. v. Nevada Bell, 825 P.2d 588, 592 (1992). "The mere failure to fulfill a
6  promise or perform in the future, however, will not give rise to a fraud claim absent evidence that
7  the promisor had no intention to perform at the time the promise was made." Id.

8  Reborn suggests nefarious intent on the part of the University but fails to allege any facts
9  supporting the allegation of the University's (or any of the University's representative's) intent to
10 mislead Reborn and knowledge of any representation's falsity. At the Hearing, Reborn argued
11 that if it had not been Dr. VanStrander's intention to mislead him, he never would have been given
12 Dr. VanStrander's dissertation document which she knew was not satisfactory. This argument is
13 circular and requires the Court to assume the truth of one element (knowledge) to infer the truth
14 of another element (intent).

15 The record before the Court lends no support for the argument that Dr. VanStrander or any
16 other University representative intentionally misled Reborn. While Dr. VanStrander does appear
17 to acknowledge to Reborn that the documents she provided were a work-in-progress, the record
18 does not support a further inference or even an argument for inferring that she or others knew
19 Reborn was being provided incorrect information. When those responsible with the overall
20 supervision of the degree program learned the documents had been provided to Reborn, they
21 admitted it was mistake. On April 26, Dr. Gavin wrote to Reborn, "I am sorry that the document
22 you attached provided you with incorrect information. I will be contacting your former Chair [Dr.
23 VanStrander] to explain that the template she is using is incorrect and should not be given to
24 students . . . ." Id. at 3. There is no evidence that, prior to these emails in April 2012, Dr.
25 VanStrander knew her template was misleading. In fact, Reborn says he showed the template to
26 other professors who supported the use of the template. Pl. Ex. 1 at 5, ECF No. 46. Furthermore,
27 there is no evidence that department leadership knew of the template's use or existence prior to
28 April 2012. And the evidence demonstrates that upon receipt of the April 2012 email, Dr. Gavin

promptly moved to provide corrective feedback and resolve the issues caused by the template. Id. at 1–4.

Finally, insofar as Reborn claims "Defendants did not have a primary intent of providing the Plaintiff with an education but rather to use the ruse of an educational process to defraud the Plaintiff monetarily," Compl. ¶56, ECF No 1-1, his claims are without any evidentiary support regarding intent. The Court recognizes that a promise made without intention to perform might constitute a false representation of a state of mind, but, while Reborn has created a dispute of fact regarding whether the University properly fulfilled its contract, there is an absence of evidence demonstrating that the University *never intended* to properly fulfill its contract.

The evidence on the record cannot support a claim for fraud, so the Court grants summary judgment as to the sixth claim.

**V.     Conclusion**

Accordingly, IT IS ORDERED that Motion for Summary Judgment, ECF No. 22, is GRANTED IN PART and DENIED IN PART. Summary judgment is granted as to the second, fifth, and sixth claims.

IT IS FURTHER ORDERED that the fourth claim is voluntarily withdrawn and DISMISSED.

IT IS FURTHER ORDERED that this case—specifically, the surviving first and third claims—shall be referred to the magistrate judge to set a settlement conference between the parties. The parties are directed to contact the magistrate judge within two weeks to set up a settlement conference.

Dated: August 5, 2015.

Richard F. Boulware II
United States District Court Judge